RECEIVED
IN LAKE CHARLES, LA.

DEC - 3 2012

TONY R. MOORE, CLERK
BY ______ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **LEONOARD BROUSSARD AND BERTHA THIBODEAUX** | : | **DOCKET NO. 2:11-CV-01446-PM-KK** |
| **VS.** | : | **JUDGE MINALDI** |
| **DOW CHEMICAL COMPANY, ET AL** | : | **MAGISTRATE JUDGE KAY** |

**MEMORANDUM RULING**

Before the court is the defendant, Dow Chemical Company's ("Dow"), Motion for Summary Judgment [Doc. 40]. Dow additionally filed a Motion to Seal Documents [Doc. 47], which were included as exhibits in its Motion for Summary Judgment (which the plaintiff does not oppose), because they contained confidential information. The Motion for Summary Judgment is opposed by the plaintiff, Leonard Broussard, who timely filed a Response [Doc. 48]. Subsequently, Dow filed a Reply [Doc. 51] to Mr. Broussard's Response. For the reasons stated herein, Dow's Motion to Seal Documents will be GRANTED because it is unopposed and its Motion for Summary Judgment will be GRANTED.

## FACTS

In this lawsuit, Mr. Broussard claims that Dow[1] contaminated his land while drilling for oil and gas during a time period before he acquired the land (1963-1975), pursuant to an oil and gas lease with a previous owner.[2] He alleges that the Dow's activities constitute a private nuisance, trespass, and "breach of the good faith requirement inherent in the oil and gas lease."[3] He seek compensation for damages, diminution of property value, loss of use of property, clean-up costs, punitive and exemplary damages, unjust enrichment damages for unauthorized use of his property, costs, attorney's fees plus interest, and all general and equitable relief that may be deemed just and proper.[4] Dow now moves for Summary Judgment on all of Mr. Broussard's claims against it.

### A. Uncontested Facts

The land in dispute in this motion is located in and around Sections 13/14, Township 12 South, Range 4 West in Cameron Parish, Louisiana.[5] The only portion of Mr. Broussard's property relevant to the his claims against Dow is described as:

---

[1]The plaintiffs have also brought claims in the instant suit against Chevron USA Inc., as successor in interest to Getty Oil Co. & Tidewater Oil Co.; Chevron USA Holdings, Inc., formerly known as Texaco Producing, Inc.; Four Star Oil & Gas Co, but these claims relate to contamination of an *adjacent* tract of land. therefore claims against those defendants are not relevant to Dow's Motion for Summary Judgment herein. *See* Pl.'s Statement of Additional Uncontested Material Facts in Opposition to Dow's Mot. for Summ. J., [Doc. 48-1], at ¶ 2.

[2]*See generally* Pl.'s Compl. The plaintiff discovered this contamination after he hired Trinity Environmental in 2011 to "assess, identify, and quantify the nature and extent of contamination on the [land]." Pl.'s Resp. In Opp. To Def.'s Mot. For Summ. J., [Doc. 48], pg. 5. The full Trinity report is attached as Exhibit E. to Mr. Broussard's Response to Dow's Motion for Summary Judgment [Doc. 48-7].

[3]Pl.'s Compl. at ¶¶ III. 11-13.

[4]*Id.* at ¶ IV.

[5]Def.'s Statement of Uncontested Material Facts [Doc. 40-2] at ¶ 1; Pl.'s Resp. To Def.'s Statement of Uncontested Material Facts [Doc. 49] at ¶ 1.

> that certain tract or parcel of land containing 51 acres, more or less, being situated in Section 13, Township 12 South, Range 4 West, being bounded now or formerly as follows, to-wit: North by lands of Wallace J. Broussard; South by lands of Dixie Rice Agricultural Corporation, Inc.; East by lands of Sylvanie Broussard Weekly; and West by lands of Adam Vincent.[6]

The chain of title for the property is as follows: Belazare and Agnes Benoit Harpin transferred the land to Anthony H. Harpin in a Judgment of Possession on September 21, 1972; Julie Kathryn Harpin Sorrell ("Mrs. Sorrell")[7] inherited the land from her father, Anthony H. Harpin, in a Judgment of Possession on March 9, 2000; Mrs. Sorrell sold the land to her uncle and aunt, William Flores Fuselier and Judy Lane Simar Fuselier, in a Private Act of Sale (contemporaneous with inheriting the land) on March 6, 2000; and finally, the Fuseliers sold the land via Cash Deed to Leonard Broussard and his former wife Jenny on August 4, 2009.[8]

During the time that Agnes and Anthony Harpin owned the land, they entered into an oil and gas lease with Dow, which began on August 13, 1963.[9] During the lease, Dow only operated one well on the land (well no. 117632), which Dow plugged on May 21, 1975, during the time period when Mrs. Sorrell's father, Anthony H. Harpin, owned the land.[10] On February 4, 1977, the Dow oil and gas lease was terminated, and Dow has conducted no further oil and gas activity

---

[6][Doc. 40-2] at ¶ 2; [Doc. 49] at ¶ 2.

[7]While Dow refers to Mrs. Sorrell as Mrs. Smith in its Motion, an affidavit from Mrs. Sorrell indicates that Smith was her former last name.

[8][Doc. 40-2] at ¶ 3; [Doc. 49] at ¶ 3. Mr. Broussard's former wife is not a party to the instant action. Additionally, while his new wife, Bertha Thibodeaux, is listed as a plaintiff, Mr. Broussard later clarified that she does not have an ownership interest in the tract of land on which Dow conducted oil and gas activities, and indeed all of her claims in this case relate to damage caused by Chevron's and its predecessor's oil and gas operations on an adjacent tract of land . Pl.'s Statement of Additional Uncontested Material Facts in Opp. To Def.'s Mot. for Summ. J., [Doc. 48-1], at ¶ 2.

[9][Doc. 40-2] at ¶ 4; [Doc. 49] at ¶ 4.

[10][Doc. 40-2] at ¶¶ 5-6; [Doc. 49] at ¶¶ 5-6.

on the land since then.[11] The ground contamination alleged by Mr. Broussard therefore would have purportedly occurred during the time frame when the oil and gas lease was in effect.

**B. Contested Facts**

As noted *supra*, the Fuseliers purchased the land from Mrs. Sorrell on March 6, 2000, and then the Fuseliers sold the land to Mr. Broussard on August 4, 2009. The rights that the parties transferred under these two sales contracts form the main basis for the parties' disagreement in the instant motion. Dow alleges that the Private Act of Sale between the Fuseliers and Mrs. Sorrell did *not* bestow any subrogation rights to the Fuseliers to recover for damage to the land as a result of the Dow's prior oil and gas drilling.[12] In contrast, Mr. Broussard alleges that when Mrs. Sorrell inherited the property and contemporaneously sold it to the Fuseliers, she sold, conveyed, and assigned *all* of her personal and property rights to the Fuseliers, including the right to sue Dow for property damage caused by their oil drilling.[13] Additionally, he argues that the *only* right or privilege Mrs. Sorrell retained upon selling the land to the Fuseliers was a 50% interest in the mineral rights on the land, and thus she did not expressly or implicitly withhold any other rights, including right to sue Dow for damages.[14]

Dow next alleges that because the Fuseliers did not receive subrogation rights to sue for prior damage to the land, the Fuseliers could not assign this right to Mr. Broussard when they sold him the land.[15] Mr. Broussard contests this, arguing that the Fuseliers were assigned all of

---

[11][Doc. 40-2] at ¶¶ 7-8; [Doc. 49] at ¶¶ 7-8.

[12] [Doc. 40-2] at ¶ 12.

[13][Doc. 49] at ¶ 12.

[14]*Id.*

[15][Doc. 40-2] at ¶ 13.

the rights and privileges Mrs. Sorrell had, including the right to sue for damages relating to any previous ownership or use of the property.[16] He further counters that when the Fuseliers sold him the property, they conveyed all of the rights and privileges they originally received from Mrs. Sorrell, including the right to sue Dow for damages.[17]

Finally, Dow alleges that since the Fuseliers could not convey to Mr. Broussard something they did not have (namely, the right to sue Dow), Mr. Broussard has no right to sue for the alleged damage caused by Dow during Dow's oil and gas lease.[18] In response, Mr. Brousard argues that as an assignee to the oil and gas lease, he has a right to sue Dow for all of the damages caused by Dow's drilling on the land.[19]

**SUMMARY JUDGMENT STANDARD**

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment is initially responsible for demonstrating the reasons justifying the motion for summary judgment by identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact for trial. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the moving party's motion for summary judgment if the movant fails to meet this burden. *Id.*

---

[16][Doc. 49] at ¶ 13.

[17]*Id.*

[18][Doc. 40-2] at ¶ 14.

[19][Doc. 49] at ¶ 14.

If the movant satisfies this burden, however, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* (quoting *Celotex*, 477 U.S. at 323). In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no genuine issue for trial, and thus a grant of summary judgment is warranted, when the record as a whole "could not lead a rational finder of fact to find for the non-moving party..." *Id.*

## LAW & ANALYSIS

### I. There Was no Express Conveyance of the Right to Sue Dow to the Fuseliers or to Mr. Broussard

The main disagreement between the parties centers around whether Mrs. Sorrell transferred to the Fuseliers the right to sue Dow for damage caused by its drilling, and, if so, whether the Fuseliers then properly transferred this right to sue to Mr. Broussard.[20] Dow argues that Louisiana law is clear on this issue: absent express written assignment of the right to sue, the right to sue does not transfer to subsequent purchasers of land when an oil and gas lease ends before the subsequent purchasers acquires it.[21] Thus, because the sales contract to the Fuseliers did not contain express assignment language, the right to sue Dow did not pass down the line from the Fuseliers, and it follows that the Fuseliers could not have passed a right to sue that they did not have to Mr. Broussard. Mr. Broussard counters that based on the terms of the contracts

[20] As a preliminary matter, it appears that the parties are not contesting whether Anthony H. Harpin (who was the last party to own the land while the oil and gas lease was in effect), properly assigned the right to sue to Mrs. Sorrell, who inherited the land from him It is possible that this issue was not briefed because Mrs. Sorrell simultaneously inherited and sold the property. As the motion can be resolved based on the arguments briefed by the parties, the undersigned will not address this issue at this time.

[21] Def.'s Mot. for Summ. J., [Doc. 40-1], at pg. 7.

of sale between Mrs. Sorrell and Fuseliers, and then between the Fuseliers and himself, the right to sue Dow was properly assigned in both instances.[22]

As this case is before the undersigned pursuant to diversity jurisdiction,[23] the court will apply the relevant substantive law of Louisiana. *See Klaxon co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941). Both parties cite to the 2011 Louisiana Supreme Court case *Eagle Pipe v. Amerada Hess Corp.*, 2010-2267 (La. 10/25/11), 79 So.3d 246, in support of their arguments on whether the right to sue Dow was properly assigned. Dow argues that the reasoning in *Eagle Pipe* supports its contention that the land sales contracts did not convey a right to sue because the right was not expressly assigned, as per the requirement of *Eagle Pipe.*[24] In contrast, Mr. Broussard argues that *Eagle Pipe* is inapplicable to this case because it is "so factually and legally distinguishable from the instant case that it scarcely lends credence to Dow's argument."[25]

The undersigned finds that Mr. Broussard's argument is without merit, and that *Eagle Pipe* and other similar Louisiana cases are directly relevant to the issue in the above-captioned case. In *Eagle Pipe,* the plaintiffs purchased land en subject to a lease between the prior landowners and the defendants, in which the defendants used the land to operate a oil pipe yard and/or pipe cleaning facility. *Eagle Pipe*, 79 So.3d at 253. Allegedly, during the defendants' lease, they released radioactive waste onto the property, contaminating the soil. *Id.* at 254. The plaintiffs claimed they did not know about the radioactive contamination until after the purchase. *Id.* The plaintiffs filed suit, alleging that the radioactive contamination was from the defendants'

---

[22]Pl.'s Resp. to Def.'s Mot. For Summ. J., [Doc. 48], at pg. 8.

[23]Defs.' Not. of Removal [Doc. 1] at pg. 3.

[24][Doc. 40-1] at pg. 6-8.

[25][Doc. 48] at pg. 16.

"activities in cleaning hazardous and radioactive contaminated pipe" during the defendants' lease with the prior land owners, and that, as a result, the "property had lost all value and [was] no longer marketable. . . ." *Id.* The defendants then filed a peremptory exception of no right of action, arguing that the plaintiffs had no right to assert a claim for damage to the property that occurred before they acquired it. *Id.* After the trial court ruled that the defendants' exceptions of no rights of action would be sustained, and a five-judge panel on the Fourth Circuit Court of Appeal reversed, the case made its way to the Louisiana Supreme Court. *Id.*

The Louisiana Supreme Court Justice Clark found that the subsequent purchaser rule would apply to the case, and therefore dismissed the plaintiffs' claims. *See id.* at 257. He first defined the subsequent purchaser rule:

> The subsequent purchaser rule is a jurisprudential rule which holds that an owner of property has no right or actual interest in recovering from a third party for damage which was inflicted on the property before his purchase, in the absence of an assignment or subrogation of the rights belonging to the owner of the property when the damage was inflicted.

*Id.* at 256-57. Justice Clark then reasoned that the right to sue for damage to the property was a personal right which belonged to the prior landowner at the time that the defendants were releasing radioactive waste onto the land. *Id.* As such, the previous owner had to expressly assign the personal right to sue in the land sales contract to the plaintiffs in order to transfer the right to sue to the plaintiffs. *Id.* Analyzing the subrogation clause,[26] Justice Clark found that

---

[26]The subrogation clause read, in relevant part:

> [The seller] does by these presents, grant, bargain, sell, convey, transfer, assign and set over with full guarantee against all mortgages, liens, claims, evictions, or other encumbrances or alienations whatsoever, and with subrogations to all her rights and actions of warranty against all previous owners, and with full guarantee of title, unto [buyer]. . . .

*Id.* at 281.

there was no express assignment to the new owner of the right to sue the former lessee for damages based on violations of the expired lease. *Id.* at 281. He additionally held that, to the extent the contamination was continuing after the defendants had left the land, they could not assert a continuing tort, because the contamination was simply the "continuing ill effect from the original tortious acts [while the defendants were on the land]." *Id.* at 279.

Justice Clark then went into an extensive history of the subsequent purchaser rule in Louisiana.[27] He cited the 1975 benchmark case *Prados v. S. Cent. Bell Tel. Co.*, 329 So. 2d 744 (La. 1975) (on reh'g), as further support of the long history of the subsequent purchaser rule. In *Prados*, a telephone company entered into a lease with landowner in order to construct buildings, sheds, and fences, structures which the company did not remove upon termination of the lease because the landowner did not ask for their removal. *Id.* at 748-49. A few months later, the landowner sold the land to the Prados, the plaintiff, who then demanded that the telephone company remove the structures on his land. *Id.* On rehearing, the Louisiana Supreme Court found that, because the lease had expired before the plaintiff acquired the property, the original landowner would have had to expressly assign the personal right to sue for damages to the plaintiff in order for the plaintiff to be able to recover against the telephone company. *Id.*

---

[27]Justice Clark noted that the first case to discuss the subsequent purchaser rule was *Clark v. J.L. Warner Co.*, 6 La. Ann. 408 (La. 1851). In *Clark*, the Louisiana Supreme Court held that the right of former property owners to sue a tortfeasor for damage inflicted onto the property *while they owned the property* was a personal right of action which had to be expressly assigned or subrogated. *Id.* Thus, a subsequent purchaser could not recover for damage which happened to the house before he bought it. *Id.*

Justice Clark also cited other early case law which supports the conclusion that there must be an express assignment of the right to sue before the new owners can sue previous tortfeasors. *See, e.g., Payne v. James*, 42 La.Ann. 230, 234 (La. 1890) (finding that ". . . damages actually suffered by the vendor before the sale, they are personal to him, and cannot be recovered by the purchaser, without an express subrogation."); *Matthews v. Alsworth*, 45 La. Ann. 465 (La. 1893) (finding that when the personal right of the owner to sue for damages was not explicitly assigned in the sale, the right did not pass to the new owner); *Bradford v. Richard*, 46 La.Ann. 1530 (La. 1894) (same).

Looking to the language of the land sales contract between the original owner and the plaintiff,[28] the court held that it was clear that the original owner had not expressly assigned the right to sue for damages. *Id.* at 749-50 ("The conveyance and subrogation clauses make no reference to the expired lease, nor to the right of the seller to a restoration of the property to its original state, nor to the right of damages.").

In *Eagle Pipe,* Justice Clark then noted that one brief opinion from the Louisiana Supreme Court, *Hopewell, Inc. v. Mobil Oil Co.*, 2000-3280 (La. 2/9/01), 784 So.2d 653 (cited by the plaintiffs to show that the holding in *Prados* was on shaky ground because the *Hopewell* court seemed to reject the subsequent purchaser doctrine), did not indeed disturb the holding in *Prados*, and was only good authority in subsequent purchaser situations where a lease was not involved.[29]

Finally, the undersigned notes that at least one court has extended the reasoning in *Prados* to a situation involving a subsequent purchaser of a tract of land which was previously subject to

---

[28]The language stated, in relevant part:

> [the seller] does by these presents, grant, bargain, sell, convey, transfer, assign and set over with full guarantee against all mortgages, liens, claims, evictions, or other encumbrances or alienations whatsoever, and with subrogations to all her rights and actions of warranty against all previous owners, and with full guarantee of title, unto [buyer]. . .

*Id.* at 749-50.

[29]In *Hopewell*, the purchasers of a tract of land sued the former owners of the land and the oil company which had conducted oil and gas operations on the land, alleging that the oil and gas company's activities had caused contamination. *Hopewell*, 33,774 (La. App. 3 Cir. 11/1/00), 770 So.2d 874, 874-75, *rev'd* 784 So.2d 653 (La. 2001). The court of appeal, relying on the *Prados* decision, found that the plaintiff-purchasers could not sue the oil and gas company for damage to their land because the right to sue for damages had not been expressly assigned. *Id.* at 877. On appeal, the Louisiana Supreme Court reversed, finding that *Prados* was distinguishable because *Prados* involved "rights arising under a lease" and the *Hopewell* case did not. *Hopewell*, 784 So.2d at 653. In limiting the reach of *Hopewell*, Justice Clark, in the *Eagle Pipe* decision, noted that "*Hopewell* was never intended to repudiate the central holding in *Prados*, or to limit that holding to damage claims against former lessees or where the damage to property is so apparent. To the extent *Hopewell* has been so interpreted, that interpretation is expressly renounced." *Eagle Pipe*, 79 So.3d at 274-75.

an oil and gas lease. In the Louisiana Third Circuit case *Lejeune Bros. v. Goodrich Petroleum Co.* 06-1557 (La. App 3 Cir. 11/28/07), 981 So.2d 23, an oil company entered into a mineral lease with a landowner. *Id.* at 24. After the lease began, the wells on the land maintained production, with the lease eventually expiring roughly one year before the landowner sold the land to LeJeune Brothers (subject to a one-half reservation in mineral rights to the landowner). *Id.* at 24-25. After the sale, LeJeune Brothers discovered that the property was contaminated with oilfield exploration and production waste, which it alleged it had not been aware of at the time of the purchase. *Id.* Lejeune Brothers subsequently filed suit against the oil company, alleging that the oil and gas activities had damaged and contaminated its property. *Id.* On appeal after the trial court granted the defendants' motion for partial summary judgment, exception of no right of action, and judgment dismissing all of Lejeune Brothers' claims, the Third Circuit's Judge Cook addressed the merits of LeJeune Brothers' contract and tort claims against the defendants.

First, Judge Cook analyzed LeJeune Brothers' claim that it had succeeded to the rights of the original oil and gas lease between the previous landowner and the defendants. *Id.* at 27. Judge Cook noted that while "there is no doubt that LeJeune Brothers acquired the *property* from [the original landowner, the more important issue was] whether LeJeune acquired any rights under the *lease* from [the original landowner]." *Id.* The judge found that the prior landowner could not have assigned his rights to an assignee under an expired lease. *Id.* at 28. Further, Judge Cook held that LeJeune Brothers could not bring a claim as a third party beneficiary to the lease, because it was clear, based on the drafting history of the original mineral lease, that the drafting parties had not intended to expand the lessee's liability beyond the damages of the lessor. *Id.* at 29.

Turning to the Lejeune Brothers' tort claims, Judge Cook found that the right to sue the oil and gas lessees for damages which occurred prior to LeJeune Brothers acquiring the land was a personal right that the prior owners had to expressly transfer. *Id.* Judge Cook continued "[t]he right to assert a claim for damages to land is a personal right, not a real right and, consequently, it is not transferred by a mere transfer of title to land; '[r]ather, for the subsequent owner of the land to be in a position to assert the claim, there must be a specific assignment of the right to him.'" *Id.* at 30 (internal citations omitted). Judge Cook further noted that the decision in *Hopwell*, discussed *supra*, had not changed the general rule from *Prados*, i.e., that in general, subsequent landowners cannot assert tort claims for property damage occurring prior to their acquisition of the land. *Id.* at 31. Addressing LeJeune Brothers' argument that *Hopewell* stood for the premise that a claim for damages arising out of a mineral lease was a real right that ran with the land to subsequent purchasers, Judge Cook expressly rejected this argument, finding that "a claim for damages, whether it arises under a predial lease [like in *Prados*] or a mineral lease, is a personal right which must be specifically assigned to run with the property." *Id.* at 32.

Turning to the instant case, both parties have dissected the language of the land sales contracts and the mineral lease, coming to divergent results on whether the parties to the sales made express assignments of the right to sue Dow for damages. First, looking to the original Dow mineral lease, the relevant provisions are as follows:

> 8. The Lessee shall be responsible for all damages of Lessor caused by Lessee's operation.
>
> 9. All provisions hereof shall extend to and bind the successors and assigns (in whole or in part) of Lessor and Lessee, but in absence of any actual constructive notice on the part of Lessee, no change in the ownership of the land or any interest therein or change in capacity or status of Lessor either resulting from sale, inheritance, interdiction, emancipation, attainment of majority, or otherwise shall

impose any additional burden on Lessee. . . .[30]

Just as in *LeJeune*, in which the court found that the prior landowners could not have transferred their rights (including the right to sue) to an assignee under an expired lease, here, it is clear that Mrs. Sorrell could not have assigned any right to sue Dow for damages to the Fuseliers under a mineral lease that expired over twenty years prior to the Fuseliers buying the land. *LeJeune*, 981 So. 2d at 28. Further, just as in *LeJeune*, in which the court found that the subsequent purchasers of the land were not third party beneficiaries to the original lease because the drafting history of the lease indicated no intent to expand the lessee's liability beyond the damages of the lessor, here, the language of the mineral lease is similar: paragraph eight of the mineral lease indicates that Dow's liability will not go beyond the damages of the *lessor*. *Id.* at 29. While paragraph nine seems to indicate that the provisions of the mineral lease will pass down to any successors or assigns of the lessor (an argument which Mr. Broussard espouses), neither the Fuseliers nor Mr. Broussard are assigns for the reasons discussed below.

Next, looking to the Private Act of Sale between Mrs. Sorrell and the Fuseliers, the relevant provision of the contract states:

> [T]he following described property, together with all the buildings, improvements, appurtenances, *and privileges thereon and thereto belonging, or in anywise appertaining*. . . .TO HAVE AND TO HOLD the [land] together with all appurtenances and improvements thereon and thereto belonging unto said purchasers and to their heirs and assigns in full property forever, free from any lien mortgage or encumbrance whatever, with full and general warranty of title, and *with full subrogation to all of the rights and actions in warranty against any and all former owners and vendors*.[31]

[30]Ex. 1 [Doc. 40-4] to Def.'s Mot. for Summ. J.

[31]Ex. C [Doc. 48-5], pg. 9 (emphasis added) to Pl.'s Resp. to Def.'s Mot. for Summ. J.

The Cash Deed between the Fuseliers and the plaintiffs contains identical language.[32] Based on the long line of caselaw discussed *supra*, this language is insufficient to show an express assignment of the right to sue Dow for damages. Nowhere does the Private Act of Sale or the Cash Deed mention the expired lease, the right of the seller to a restoration of the property to its original state, or the right of damages. This right was not expressly assigned to the Fuseliers, and thus it could not be, nor is it, expressly assigned to Mr. Broussard.

While Mr. Broussard argues that paragraph nine of the Dow mineral lease provides that the terms of the lease will extend to assigns (here, the Fuseliers and himself), and argues that the Dow lease does not "specify and/or limit the scope of any assignment, much less qualify or describe the particular manner in which rights must be assigned," this argument cannot stand.[33] As the right to sue is a personal right, it must be expressly assigned. Further, Mr. Broussard's argument that Mrs. Sorrell implicitly conveyed the right to sue to the Fuseliers because the only right she *explicitly* reserved was the one-half mineral interest also fails for the same reason: a right to sue must be expressly assigned, not implicitly reserved.[34] This is supported by the result in *LeJeune*, in which the seller similarly expressly reserved a one-half mineral interest in the land but did not expressly convey the right to sue, and the court found that the seller had not assigned the right to sue to the buyer. *See Lejeune,* 981 So. 2d at 32.

Finally, Mr. Broussard's argument that the reasoning in *Eagle Pipe* is inapplicable (because of a footnote in the decision which indicates that the court expresses "[n]o opinion as to the applicability of our holding to fact situations involving mineral leases or obligations arising

---

[32]Ex. D [Doc. 48-6], pg. 9 to Pl.'s Resp. To Def.'s Mot. For Summ. J.

[33][Doc. 48] at pg. 11.

[34]*Id.* at 13.

out of the Mineral Code") is irrelevant, as the undersigned adopts the reasoning in *LeJeune*, which is more factually similar to the instant case, and in which, as noted *supra,* the court held that the subsequent purchaser rule would apply whether a court was construing a mineral lease or a predial lease.[35] *Id.*

**II. The Parol Evidence Rule does not Apply**

Mr. Broussard additionally argues in his Response that, to the extent the sales contracts are ambiguous as to whether he acquired the right to sue Dow, the court can use parol evidence to clarify this issue.[36] He contends that Mrs. Sorrell and the Fuseliers both believed that the right to sue Dow transferred upon the sale from Mrs. Sorrell to the Fuseliers and then from the Fuseliers to himself, and supports this argument with affidavits from Mrs. Sorrell and the Fuseliers.[37] Because both Mrs. Sorrell and the Fuseliers believed they were transferring the right to sue Dow to the next purchaser, Mr. Broussard argues that it follows that there is a genuine issue of material fact on the contents of the sales contracts, thus raising enough of a factual dispute to require the undersigned to deny the instant motion.[38]

In response, Dow argues that in Louisiana, it is clear that a land sale contract must have an express written assignment in order for the right to sue to transfer to a subsequent purchaser, and thus any parol evidence is irrelevant.[39] Because the sales contracts from Mrs. Sorrell to the

---

[35] *Id.* at 20.

[36] *Id.* at 14.

[37] *Id.* at pgs. 14-18; *see also* Ex. C (Declaration of Mrs. Sorrell), Ex. D (Declaration of Fuselier) to Pl.'s Resp. to Def.'s Mot. for Summ. J., [Docs. 48-5, 48-6].

[38] *See id.*

[39] Doc. [51], at pgs. 10-11.

Fuseliers did not contain an express written assignment of the right to sue, Dow argues that it is clear that Mr. Broussard cannot now sue Dow for contamination to his land.[40] Dow further argues that the Louisiana Civil Code requires an express written assignment of the right to sue because the right to sue is an incorporeal immovable, and Louisiana does not allow a party to use parol evidence to establish title to such an incorporeal immovable.[41] Finally, Dow argues that Louisiana only allows parol evidence in situations involving a written contract when the contract has been destroyed, lost or stolen.[42] Since there was never a written instrument transferring the incorporeal immovable right of action to sue, Dow reasons, Mrs. Sorrell and the Fuseliers' testimony on the sales contracts is inadmissible under Louisiana law.[43]

Mr. Broussard correctly contends that parol evidence may be submitted in order to clarify or explain an ambiguity, but may not be used to vary the terms of the contract. *See* La. C.C. art. 1848. His argument that it is "ambiguous" whether the parties intended to convey the right to sue for damages is misplaced, however. As discussed *supra*, the subsequent purchaser rule requires an express assignment of the right to sue *in the conveyance contract*. Turning to the subrogation language in the conveyance contracts in *Prados* and *Eagle Pipe,* they are similar to the subrogation language in the Private Act of Sale (from Mrs. Sorrell to the Fuseliers) and the Cash Deed (from the Fuseliers to Mr. Broussard). Just as in *Prados,* in the instant case, "[t]he conveyance and subrogation clauses make no reference to the expired lease, nor to the right of the seller to a restoration of the property to its original state, nor to the right of damages."

[40] *Id.* at pg. 11.

[41] *Id.*

[42] *Id.*

[43] *Id.*

*Prados*, 329 So. 2d at 750.

Thus, if the undersigned followed Mr. Broussard's suggestion, and found not only that the subrogation clauses in this case were ambiguous, but also that self-serving "after the fact" affidavits could single-handedly create the right to sue years after the parties executed their conveyance documents, the parol evidence rule would essentially completely nullify the longstanding "express assignment" requirement of the subsequent purchaser rule. Any landowner whose land was formerly subject to an oil and gas lease and whose sales contract contained a subrogation clause similar to the subrogation clause in this case (namely, a subrogation clause that did not mention an expired lease, the right to sue for damages, or restoring the property to its original state), could file suit, claiming that when they bought their land, there was an implicit, unwritten agreement between the parties that the right to sue would transfer to them. Because of the potential far-reaching consequences which would result, the undersigned cannot agree with Mr. Broussard's argument on this point.

Further, the cases which Mr. Broussard cites in support of his argument that parol evidence should be admissible do not address the issue of parol evidence circumventing the subsequent purchaser rule, or the requirement for express assignment of a right to sue for damages, and thus are not controlling on this case. *See, e.g., Diefenthal v. Longue Vue Mgmt Corp.*, 89,2880 (La.4/30/90); 561 So. 2d 44 (finding that parol evidence was admissible because it did not vary the terms of a settlement agreement, but instead supported them); *Miller v. Miller*, 44,163 (La. App. 2 Cir. 1/14/09), 1 So. 3d 815 (finding that parol evidence was admissible to clarify an ambiguous term in a joint custody agreement); *Capdeville v. White's Temple of Church of God in Christ, Inc.*, 99,1040 (La. App. 3 Cir. 12/22/99) (finding that parol evidence was admissible to correct a mutual mistake on a promissory note); *Guilbeau v. C&D Reprographics-*

*Lafayette*, 568 So. 2d 206 (La. App. 3 Cir. 1990) (finding that parol evidence was admissible to clarify a missing term of a lease).

The one case Mr. Broussard cites which involves the parol evidence rule and conveying an interest from a mineral lease likewise is not controlling on this case. In *Teche Realty & Investment v. Morrow*. 95,1473 (La. App. 3 Cir. 4/17/96); 673 So. 2d 1145, the Louisiana Third Circuit allowed the defendant to testify about a later cash deed (which did not contain a conveyance of a 50% mineral interest to the purchaser-plaintiff) to come in as evidence against the presumption that the parties had intended to convey the 50% interest (as evidenced by an earlier purchase agreement which did contain the conveyance). *Id* at 1146. The court held that parol evidence was admissible in this instance to prove the existence of a subsequent agreement to modify the written agreement and delete the 50% mineral interest, and ultimately found that the parties had intended to leave out the conveyance of the mineral interest. *Id.* at 1147. In this instance, however, Mr. Broussard is not arguing that there was a subsequent agreement to modify the original conveyance documents, or presenting subsequent documents which indicate that the parties assigned the right to sue: instead, he presents affidavits which indicate that the intent to convey a right to sue existed at the time of conveyance. For this reason, and because *Teche* does not involve the subsequent purchaser doctrine and assignment of the right to sue for damages, *Teche* is not controlling on this case.

**III. The Prescriptive Period has Passed on a Reformation Action**

Finally, the undersigned addresses an issue brought up for the first time in the parties' briefs: whether Mr. Broussard can bring a reformation action to reform the terms of the Private Act of Sale between Mrs. Sorrell and the Fuseliers in order to reflect a subrogation of the right to sue for damages. As the ten year prescriptive period to reform the Private Act of Sale, which

began to run on the date of execution of the Private Act of Sale (March 6, 2000) had passed before he even filed his lawsuit on June 28, 2011, however, Mr. Broussard's reformation claim is no longer viable. *See Robert Inv. Co. v. Eastbank, Inc.*, 496 So. 2d 465, 472 (La. App. 2 Cir. 1986) ("With regard to prescription, the reformation of an instrument is a personal action and is subject to the ten-year prescriptive period set forth in La. C.C. art. 3499.").

**CONCLUSION**

For the reasons stated herein, Dow's Motions for Summary Judgment will be GRANTED and the plaintiff's claims against Dow will be DISMISSED WITH PREJUDICE.

Lake Charles, Louisiana, this 2 day of December 2012.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE