RECEIVED
IN LAKE CHARLES, LA.
OCT -1 2013
TONY R. MOORE, CLERK
BY_____
      DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **LEONARD BROUSSARD, ET AL** | : | **DOCKET NO. 2:11-CV-1446** |
| **VS.** | : | **JUDGE MINALDI** |
| **TMR COMPANY, ET AL** | : | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the court is a Motion for Summary Judgment as to Certain Affirmative Defenses [Rec. Doc. 116] pleaded by the Chevron defendants. This motion was filed by the plaintiffs, Leonard Broussard and Bertha Thibodeaux. The defendants, Chevron USA Holdings, Inc., and Chevron USA, Inc. (collectively "Chevron") timely filed an opposition [Rec. Doc. 143]. No Reply was filed. For the following reasons, the plaintiffs' motion is GRANTED IN PART and DENIED IN PART.

## FACTUAL BACKGROUND

This is an environmental contamination/remediation case arising from several oil and gas defendants' drilling and exploration activities on the plaintiffs' property in Sections 13 and 14, Township 12 South, Range 4 West in Cameron Parish (the "Subject Property").

Oil and gas exploration and production activities by Chevron commenced on the Subject Property in 1965, with the drilling of the W.J. Broussard #1 Well, Serial Number 108406. Chevron operated on the Subject Property pursuant to an Oil, Gas, and Mineral Lease, dated November 8,

1

1962, from Wallace J. Broussard, as Lessor, to Bryant A. Fehlman, as Lessee, which was later assigned to Tidewater Oil Company ("the Broussard Lease"). Chevron operated a total of three wells on the Subject Property.

All oil and gas exploration and production activities on the Subject Property ceased no later than 1976, when the last of the three wells operated by Getty Oil Company on the Subject Property, the W.J. Broussard No. 1 well, was plugged and abandoned. The Broussard Lease terminated for lack of production no later than 1977.

The plaintiffs filed suit against Chevron on June 28, 2011. The plaintiffs' claims arise from the use of a pit constructed by either Tidewater or Getty during their operations on the subject property.

## MOTION FOR SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment is initially responsible for demonstrating the reasons justifying the motion for summary judgment by identifying portions of pleadings and discovery that show the lack of a genuine dispute of material fact for trial. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the moving party's motion for summary judgment if the movant fails to meet this burden. *Id.*

If the movant satisfies this burden, however, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* (quoting *Celotex*, 477 U.S. at 323). In evaluating motions for summary judgment, the court must view all facts in the light most favorable

to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no genuine issue for trial, and thus a grant of summary judgment is warranted, when the record as a whole "could not lead a rational finder of fact to find for the non-moving party..." *Id.*

## LAW AND ANALYSIS

In its answer to the lawsuit, Chevron has pleaded several affirmative defenses. The plaintiffs are arguing that Chevron, during subsequent discovery, has failed to advance evidence to support several of these affirmative defenses - i.e, its fourth, fifth, sixth, eighth, ninth, tenth, eleventh, twelfth, and thirteenth affirmative defenses. These affirmative defenses are as follows:

* **Fourth**: accord and satisfaction, payment, release, *res judiciata*, arbitration and award, and estoppel;

* **Fifth**: third party fault, act of God, force majeure, and comparative fault;

* **Sixth**: subsequent purchaser doctrine;

* **Eighth**: waiver;

* **Ninth**: comparative fault;

* **Tenth**: alternative pleading that plaintiffs be reduced to the extent of the their settlement with other parties;

* **Eleventh**: estoppel by consent or acquiescence to regulatory actions or remediation efforts;

* **Twelfth**: plaintiffs' recovery be limited to diminution in the value of the property; and

* **Thirteenth**: failure to join persons under Fed.R.Civ.P. 19.

<u>Accord and satisfaction, payment, release, *res judiciata*, arbitration and award, and estoppel.</u>

Accord and satisfaction is a common-law doctrine that "embraces the discharge of an obligation by a debtor rendering, and a creditor accepting, performance different from that the

creditor claims due." *Fischbach & Moore, Inc. v. Cajun Elec. Power Coop., Inc.*, 799 F.2d 194, 197 (5th Cir.1986). "In its most common form, an accord and satisfaction exists as a mutual agreement between the parties in which one pays or performs and the other accepts payment or performance in satisfaction of a claim or demand which is a bona fide dispute." *O'Connor v. United States*, 308 F.3d 1233, 1240 (Fed.Cir.2002) (internal quotation omitted). An "accord" is the parties' bilateral agreement to settle the claim once certain conditions are met, such as the payment of an agreed-upon dollar amount. *See Tri-O, Inc. v. United States*, 28 Fed. Cl. 463, 470 (1993) (citing *Chesapeake & Potomac Tel. Co. v. United States*, 654 F.2d 711, 716 (Ct.Cl.1981)). The "satisfaction" is the performance of that agreement which occurs when the stated conditions are met. *Id.* "The three elements essential to the confection of a valid accord and satisfaction are: (1) a disputed claim, (2) the debtor's tendering of a sum less than that claimed by the creditor, and (3) the creditor's acceptance of the payment." *United States v. Bloom*, 112 F.3d 200, 206 (5th Cir.1997) (footnotes omitted). The Fifth Circuit has observed that "mutual consent is an absolute requisite to the formation of a contract of accord and satisfaction." *Fischbach & Moore*, 799 F.2d at 198.

  The plaintiffs are the creditors and Chevron is the debtor for purposes of analyzing this affirmative defense. The plaintiffs argue that Chevron has developed no evidence of the last two elements—a tender by Chevron or acceptance of a tender by the plaintiffs. The plaintiffs submit that, because Chevron has not produced a document that would constitute a tender, Chevron cannot produce evidence that Plaintiffs accepted any tender. Therefore, summary judgment should be granted. *See, e.g., United States v. Nelson*, 821 F. Supp. 1137, 1139 (W.D. La. 1993) (granting summary judgment for the plaintiff on the defendant's affirmative defense of accord and satisfaction).

The affirmative defense of "payment" arises under LA. C.C.P. art. 1005 as an "extinguishment of an obligation." *Boudreaux v. State Farm Mut. Auto. Ins. Co.*, 825 So. 2d 558, 562 (La. App. 4 Cir. 2002). Specifically, obligations are extinguished by payment." *Sliman v. Weaver*, 162 So. 87, 89 (La. Ct. App. 1935). "'By payment' is meant, not only the delivery of a sum of money, when such is the obligation of the contract, but the performance of that which the parties respectively undertook, whether it be to give or to do." *Id.* The plaintiffs argue that Chevron has not introduced evidence that it has advanced or tendered any payment or performance to Plaintiffs in satisfaction of any obligation under contract.

In order to be entitled to the defense of "release" Chevron must raise evidence that it and the plaintiffs entered into some sort of settlement or knowing release of the plaintiffs' claims against Chevron. See, e.g., *Mooneyhan v. State Farm Mut. Auto. Ins. Co.*, 290 So. 2d 405, 406 (La. Ct. App. 1974).

Chevron acknowledges that the affirmative defenses of *res judicata* and arbitration have no applicability based upon the record and they have withdrawn those affirmative defenses.

This leaves the remaining affirmative defenses of estoppel and waiver. The elements of waiver and estoppel are different. Justice Dennis, for the Louisiana Supreme Court, defined waiver as "the intentional relinquishment of a known power or privilege". *Tate v. Charles Aguillard Ins. & Real Est.*, 508 So.2d 1371, 1373 (La.1987). Equitable estoppel is founded on detrimental reliance on the representations of the other party. Estoppel occurs when "a party has been induced to rely upon asserted facts or representations and thereby moved or acted to his detriment, or in a manner he would not have done but for his reliance upon such asserted facts or representations". *Goodwin v. Federal Mut. Ins. Co.*, 180 So. 662, 666 (La.App. 2 Cir.1938). *Robbins Tire & Rubber v.*

*Winnfield Retread*, 577 So.2d 1189, 1991 (La.App. 2 Cir.1991) sets forth the three elements of equitable estoppel: "(1) a representation by conduct or words; (2) justifiable reliance; and (3) a change of position to one's detriment because of the reliance."

Chevron argues that the evidence considered by this court in conjunction with the June 14, 2013 Ruling (Rec. Doc. 122) proves accord and satisfaction, payment, release, estoppel, by consent or acquiescence to regulatory actions or remediation efforts. This court does not agree. Chevron has not demonstrated mutual consent between the parties to settle the debt, nor have they shown acceptance by Broussard of the amount paid as satisfaction of the judgment. The evidence considered by this court when considering the issue of constructive knowledge of potential contamination of the land differs from that required to establish accord and satisfaction. The evidence before the court does not meet Chevron's burden. Therefore, the plaintiffs' motion for summary judgment on the affirmative defenses of accord and satisfaction, payment, release, and estoppel will be GRANTED.

<u>Affirmative Defenses of Third Party Fault, Act of God, Force Majeure, Comparative Fault and Entitlement</u>

In its Fifth Affirmative Defense, Chevron pleads: (1) third party fault; (2) act of God; and (3) *force majeure*. The defendant concedes that, at the present time, there is no evidence which demonstrates the applicability of the defenses of third party fault, act of God, or *force majeure*. (Chevron Memo. In Opposition, p. 6). Chevron argues that the only evidence of alleged property damage offered by the plaintiffs is the testimony of J. Jay Klein. They argue that they do know what other evidence the plaintiff may introduce at trial, so the dismissal of this affirmative defense would be premature. This argument is not persuasive. The burden is on the defendant to prove the

6

affirmative defense. There is no evidence in the record of an act of God or force majeure. Therefore the summary judgment will be granted on these two affirmative defenses.

As for third party fault (fifth affirmative defense) and comparative fault (ninth affirmative defense), this motion for summary judgment is premature. There are several defendants in this case and the evidence shows several companies participating in the drilling of this land. Chevron has not yet produced any evidence as of this date that has proven that the plaintiffs contributed to the damages. There is a genuine issue of material fact with respect to third party fault and comparative fault. This will be a question for the jury.

Subsequent Purchaser Doctrine

The "subsequent purchaser rule" is a jurisprudential rule which holds that an owner of property has no right or actual interest in recovering from a third party for damage which was inflicted on the property before his purchase, in the absence of an assignment or subrogation of the rights belonging to the owner of the property when the damage was inflicted. *Eagle Pipe & Supply, Inc. v. Amerada Hess Corp.*, 79 So.3d 246, 279 (La. 2011).

The plaintiffs argue that, although Chevron's conduct occurred on the subject property prior to Plaintiffs succeeding to ownership, they were assigned the same rights as their father, Wallace Broussard. Ex. B at ¶9 (all provisions of Lease including obligation for surface damages, etc. ran to "successor and assigns"); Ex. C at 12:20-13:3, 40:14-19. Because there was a valid assignment of rights in the Lease, the plaintiffs assert that Chevron is barred from raising the subsequent purchaser doctrine as a defense, and summary judgment should be granted in this regard.

The plaintiffs' ownership of the property at issue in this lawsuit was acquired through donation and inheritance. See Act of Donation, dated November 15, 1971, from Wallace J.

7

Broussard to Bertha Marie Broussard and Leonard Paul Broussard, attached as Exhibit 1 (bates labeled BROUSSARD 000014-000016); Act of Donation, dated January 3, 1972, from Wallace J. Broussard to Bertha Marie Broussard and Leonard Paul Broussard, attached as Exhibit 2 (bates labeled BROUSSARD 000017-000019); Act of Donation, dated May 23, 1973, from Wallace J. Broussard to Bertha Marie Broussard and Leonard Paul Broussard, attached as Exhibit 3 (bates labeled BROUSSARD 000020-000022); and Judgment of Possession in the Succession of Neomie Broussard Broussard, dated July 7, 1983, attached as Exhibit 4 (bates labeled BROUSSARD 000023-000026).

Chevron operated on the Subject Property pursuant to an Oil, Gas and Mineral Lease, dated November 8, 1962, from Wallace J. Broussard, as Lessor, to Bryant A. Fehlman, as Lessee, later assigned to Tidewater Oil Company ("the Broussard Lease"). See Rec. Docs. 65-2 and 65-3.

The Louisiana Supreme Court held in *Eagle Pipe and Supply, Inc. v. Amerada Hess Corp.* 79 So.3d 246, (La. 10/25/11) (hereinafter "Eagle Pipe"), that "absent assignment or subrogation" a subsequent purchaser of property does not have a right to assert a claim for damages which were inflicted on the property before the sale. *Id.* at 253, 284. The Supreme Court concluded that there was no express assignment or subrogation of the former property owners' personal right to sue for damages either in tort or under the expired contract or agreements in the Act of Sale, and affirmed the trial court's grant of the defendant's exception of no right of action. *Id.*

Jurisprudence discussing the subsequent purchaser doctrine has been restricted to the transfer of ownership through sale, not donations as is the case here. Chevron argues that the rule should be the same for donations. The plaintiffs submit that although Chevron's conduct occurred prior to the plaintiffs succeeding to ownership, they were assigned the same rights as their father, Wallace

Broussard as all provisions of the lease ran to "successors and assigns." Broussard argues that, because there was a valid assignment of rights in the lease, Chevron is barred from raising the subsequent purchaser doctrine as a defense. The court agrees with the plaintiffs and will grant summary judgment on this point, but also notes that it has ruled that the contractual claims have prescribed, so this point may be moot.

Waiver

In its Eighth Affirmative Defense, Chevron contends that the plaintiffs or their predecessors waived and/or released any claims they may have against Chevron arising out of operations on the subject property. A release or waiver has legal validity only if it possesses the essential elements of a contract, including consent. *Whittington v. Sowela Technical Institute*, 438 So.2d 236, 242 (La. App. 3d Cir.), writ denied, 443 So.2d 591 (La. 1983); *Jordan v. City of Baton Rouge Through City Police Dept.*, 529 So. 2d 412, 415 (La. Ct. App. 1988) writ denied, 532 So. 2d 152 (La. 1988). Four elements are necessary for formation of a contract in Louisiana: (1) capacity, (2) consent, (3) certain object, and (4) lawful cause. *See Leger v. Tyson Foods, Inc.*, 670 So.2d 397(La.App. 3 Cir.1996), writ denied, 671 So.2d 920(La.1996). The plaintiffs argue that, under the present circumstances, Chevron has developed no evidence that it and the plaintiffs formed any contract that would result in a waiver or release of the plaintiffs' claims against Chevron. Thus, summary judgment should be granted on this defense. The court agrees. Again, any release that was filed arising from the death of the cows on the property did not absolve Chevron from any and all obligations that may have arisen pursuant to the lease.

Reduction of Damages

The next issue raised by Chevron is the alternative pleading that the plaintiffs' damages

9

should be reduced to the extent of their settlement with other parties.

Chevron's alternative defense of reduction of damages requires a threshold showing that any settling or released party is/was a joint tortfeasor with Chevron. *Harvey v. Travelers Insurance Co.*, 163 So.2d 915 (La.App.3rd Cir. 1964). For the same reasons that the court finds a summary judgment on comparative fault or third party fault premature, a summary judgment on such a reduction of damages is also premature.

Estoppel by Consent or Acquiescence to Regulatory Actions

Chevron again argues that this court's prior June 14, 2013 ruling establishes their burden of proof in regard to estoppel by consent or acquiescence to regulatory actions or remediation efforts. This argument is not persuasive. Chevron has not provided evidence that any settling or released party was a joint tortfeasor. There is no evidence of consent or acquiescence to regulatory actions or remediation efforts that would support a reduction of damages. Accordingly, summary judgment will be granted in regard to estoppel by consent or acquiescence to regulatory actions or remediation efforts.

Recovery should be limited to the diminution in the value of the property

Chevron's next affirmative defense is that the plaintiffs' recovery should be limited to the diminution in the value of the property.

The plaintiffs argue that in the operative Lease in this case the parties agreed:

> Lessee shall be responsible for all surface damages to the land, buildings, irrigation wells and all other improvements thereon, caused by its operations hereunder and lessee shall restore the surface of the land, as near as practicable, to its original condition following cessation of operations thereon, if any.

Plaintiffs' Ex. B at ¶ 8.

The plaintiffs argue that, as the parties contractually agreed that Chevron would be responsible for surface damages to land, buildings, irrigation wells, and other improvements. Plaintiffs are not limited in damage model to the diminution in value of the subject property.

Chevron submits that, because the plaintiffs' claims in contract have been dismissed, they agree that this affirmative defense would be moot. Chevron further argues that the plaintiffs have no evidence of damage to the Subject Property other than a damage model specifically based upon their interpretation of the underlying lease.

Chevron argues that the plaintiffs can prove no "injury" to the Subject Property, and they have not even attempted to do so. They rely entirely upon the restoration obligation under the lease. This is correct, the plaintiffs' claim is based on contract. Therefore, based upon this court's prior ruling that the contract claims have prescribed, this affirmative defense is moot.

Failure to join persons under Fed.R.Civ.P. 19.

Chevron's thirteenth affirmative defense is that Plaintiffs are barred from recovery against these answering defendants due to plaintiff's failure to join parties, pursuant to Federal Rule of Civil Procedure, Rule 19. The plaintiffs argue that the current parties can receive the complete relief sought without the presence of other parties. Furthermore, the plaintiffs argue that there is no indication that Chevron or any other party will be subject to multiple or inconsistent obligations. As such, Chevron's thirteenth affirmative defense should be stricken.

There is no argument urged by Chevron to support the viability of this affirmative defense. Chevron does not indicate which parties the plaintiffs should have been joined. This motion will be granted.

## CONCLUSION

In accordance with the foregoing, the court will rule on the plaintiff's Motion for Summary Judgment on affirmative defenses as follows:

Fourth: The plaintiffs' summary judgment on the affirmative defenses of accord and satisfaction, payment, release, and award will be GRANTED. The affirmative defenses of *res judiciata* and arbitration were withdrawn by Chevron;

Fifth: The plaintiffs' summary judgment on the affirmative defenses of act of God and *force majeure* will be GRANTED. Summary judgment on the affirmative defenses of third party fault and comparative fault will be DENIED as premature;

Sixth: The plaintiffs' summary judgment on the affirmative defense of the subsequent purchaser doctrine will be GRANTED.

Eighth: The plaintiffs' summary judgment on the affirmative defense of waiver will be GRANTED;

Ninth: Summary judgment on the affirmative defense of comparative fault will be DENIED as premature;

Tenth: Summary judgment on the alternative pleading that the plaintiffs should be reduced to the extent of their settlement with the other parties will be DENIED as premature;

Eleventh: Summary judgment on the affirmative defense of estoppel by consent or acquiescence to regulatory actions or remediation efforts will be GRANTED;

Twelfth: Summary judgment on the affirmative defense that Recovery should be limited to the diminution in the value of the property will be DENIED as moot; and

Thirteenth: Summary judgment on the affirmative defense of failure to join persons pursuant

to Fed.R.Civ.P. 19 will be GRANTED.

Lake Charles, Louisiana, this __17__ day of __September__ 2013.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE